IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>IRVING FREIBERG and HARVEY L. CARMICHAEL a/k/a HARVEY L. CARNICLE,<br><br>Defendants. | ORDER IMPOSING SECURITIES FRAUD SANCTIONS AGAINST MR. CARMICHAEL<br><br><br><br>Case No. 2:05-CV-00233 PGC |

In its Findings of Fact and Conclusions of Law [#119], the court found defendant Harvey L. Carmichael liable for participating in a fraudulent publicity campaign in violation of § 10(b) of the Securities and Exchange Act of 1934. The court, however, also found that the Securities and Exchange Commission had failed to offer sufficient evidence in support of its other claims. Accordingly, the court ordered additional briefing on two remaining issues: (1) the amount of disgorgement and interest the court should order in light of its findings, and (2) the appropriateness and amount of civil penalties to be imposed against Mr. Carmichael.

The court, after carefully reviewing the parties' supplemental memoranda and assuming familiarity with the facts as discussed in its previous orders, now orders that Mr. Carmichael shall pay disgorgement and prejudgment interest of $73,555, as well as a second-tier civil penalty

of $50,000.

   *(A)  Mr. Carmichael Shall Pay Disgorgement and Prejudgment Interest of $73,555*

In its Findings of Fact and Conclusions of Law, the court determined that "Mr. Carmichael should be required to disgorge his illegally obtained gains and the benefits of his illegal conduct."[1]  Additionally, the court found it "appropriate to order Mr. Carmichael to pay pre-judgment interest beginning July 1, 2002, to compensate for the use of his ill-gotten gains since that time."[2]

As noted by the Second Circuit, district courts possess broad discretion in ordering and calculating disgorgement of ill-gotten gains.[3]  When such calculations escape precision, "'any risk of uncertainty . . . should fall on the wrongdoer whose illegal conduct created that uncertainty.'"[4]  As a result, disgorgement need only constitute "a reasonable approximation of profits causally connected to the violation."[5]  And as such, "it is proper to assume that all profits gained while defendants were in violation of the law constituted ill-gotten gains."[6]

Here, Mr. Carmichael retained Mr. Freiberg for the purpose of effecting a fraudulent "pump and dump" scheme in January 2002.  Mr. Carmichael's trading through July 2, 2002 must be included in the disgorgement figure because the fraud remained ongoing during that time without him taking any steps to correct the false and misleading information that he and Mr.

---

[1] Findings of Fact & Conclusions of Law 51 (Docket No. 119).

[2] *Id.* at 51–52.

[3] *SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996).

[4] *Id.* (quoting *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995)).

[5] *SEC v. Bilzerian*, 814 F. Supp. 116, 121 (D.D.C. 1993) (quoting *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)).

[6] *Id.* at 121 (citations omitted).

Freiberg had disseminated into the market. Accordingly, because it is proper to assume that all profits gained by Mr. Carmichael while he was in violation of the law constitute "ill-gotten gains," the court finds that the SEC's proposed disgorgement figure of $54,299.68 is a reasonable approximation of the profits casually connected to his illegal activity in this case.

The court further notes that several courts have held that the rate charged by the IRS on underpayment of taxes is the appropriate rate to be used in calculating prejudgment interest,[7] and that Mr. Carmichael has cited no authority for his contrary position that the court should instead apply the statutory rate provided by 28 U.S.C. § 1961. Accordingly, the court agrees with the SEC that the proper calculation of prejudgment interest is $19,254.61,[8] which brings the total amount of disgorgement plus interest to $73,555.

*(B) Mr. Carmichael Shall Pay a Second-Tier Civil Penalty of $50,000*

The court also finds that a second-tier penalty of $50,000 is appropriate in this case. Penalties under 15 U.S.C. § 78u(d)(3)(B) fall under three "tiers" according to increasing levels of culpability as defined by the statute. Penalties increase from a maximum of $5,000 per violation for tier one, a maximum of $50,000 per violation for tier two, and a maximum of $100,000 per

---

[7] *See, e.g., First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) ("courts have approved the use of the IRS underpayment rate in connection with disgorgement"); *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 612 n.8 (S.D.N.Y. 1993) ("Courts have awarded the Commission prejudgment interest calculated using the interest rates established quarterly by the Internal Revenue Service for money owed to the United States Treasury."); *SEC v. Parks*, 222 F. Supp. 2d 1124, 1132 (C.D. Ill. 2002) (granting SEC's request for prejudgment interest "at the rate charged for underpayment of income taxes"); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 16–17 (D.D.C. 1998) (calculating the amount of prejudgment interest "using the rate set quarterly by the Internal Revenue Service for money owed to the United States Treasury"); *SEC v. Downe*, 969 F. Supp. 149, 158 (S.D.N.Y. 1997) (ordering defendant to pay prejudgment interest "based on the Internal Revenue Service rate used for underpayment of taxes").

[8] *See* Carmichael Prejudgment Interest Calculation Report, Attach. 1 (Docket No. 122).

violation for tier three,[9] and the court ultimately determines the amount of any civil penalty "in light of the facts and circumstances" of the particular case.[10]

The instant case is arguably a third-tier penalty situation given the nature and scope of Mr. Carmichael's fraudulent conduct, the serious recklessness of his participation in the "pump and dump" scheme, and the inherent risk of loss he created to potential buyers of Gateway stock.[11] The question, however, is a close call. And the court ultimately finds that Mr. Carmichael's single violation is not of the extremely egregious kind that courts have found to warrant third-tier penalties.[12] Accordingly, the court instead finds that a second-tier penalty of $50,000 is better-suited to the facts and circumstances presented here. In light of all the evidence in the case, Mr. Carmichael clearly falls within that tier and he has not argued otherwise.

## CONCLUSION

For the foregoing reasons, the court hereby ORDERS that Mr. Carmichael shall pay (1) disgorgement and prejudgment interest in the amount of $73,555 and (2) a third-tier civil penalty of $50,000. The Clerk's Office is directed to close the case.

---

[9] *See* 15 U.S.C. § 78u(d)(3)(B)(i)–(iii).

[10] 15 U.S.C. § 78u(d)(3)(B)(i).

[11] *See* 15 U.S.C. § 78u(d)(3)(B)(iii) (providing that third-tier penalties are appropriate when the violation (1) "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and (2) "resulted in substantial losses or created a significant risk of substantial losses to other persons").

[12] *See, e.g., SEC v. Autocorp. Equities, Inc.*, 292 F. Supp. 2d 1310, 1330 (D. Utah 2003) (imposing third-tier penalties where defendant committed an indisputable act of fraud or deceit by fabricating and selling fake Russian CDs); *SEC v. Berger*, 244 F. Supp. 2d 180, 185, 193–94 (S.D.N.Y. 2001) (finding $100,000 third-tier penalty appropriate where defendant created fictitious account statements and acted willfully and knowingly in carrying out the fraud for over three years); *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421, 426 (D. Md. 2005) (finding $120,000 third-tier penalty appropriate where defendant altered and falsified official documents, contrived phony account statements for individual investors, and created sham corporations to accept payments resulting in individual investor and corporate losses in excess of $4 million).

DATED this 2nd day of November, 2007.

                          BY THE COURT:

                          _____
                          Paul G. Cassell
                          United States District Judge